IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LORENZO BILLINGSLEY, | ) | |
| #188586, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-748-ECM-WC |
| | ) | (WO) |
| | ) | |
| D. DANIELS,  CORR. OFF., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on September 8, 2016, by Lorenzo Billingsley, an indigent state inmate, challenging actions which occurred at Kilby Correctional Facility.  (Doc. 1).  Thereafter, the plaintiff filed a motion for leave to amend and supplement the complaint.  (Doc. 18).  By order dated April 10, 2017, this court granted the plaintiff's motion to amend the complaint and ordered the defendants to file an answer and special report to the complaint, as amended.  (Doc. 19).  In his complaint, as amended, Billingsley alleges that on August 6, 2016, at 5:15 a.m. he was assaulted by correctional officer D. Daniels "by throwing me out of my wheelchair onto a steel box on my stoumch {sic} were {sic} I had just had surgery and causing me very bad pain and injuery {sic} to my stoumch {sic}."  (Doc. 1 at pp. 2-3).   He further alleges that D. Daniels was deliberately indifferent to his medical needs because he failed to assist him with getting medical assistance from a nurse to empty his drainage bags.

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

(Doc. 18 at pp. 1-2).   The plaintiff also alleges that Dr. Wilcotte Rahming was deliberately indifferent to his medical needs because "he refused too {sic} have me taking {sic} too {sic} the E.R. for medical treatment" following the August 6 incident.  (Doc. 1 at p. 3).

The named defendants are correctional officer D. Daniels, Warden Phyllis Billups, Dr. Wilcotte Rahming, and Sgt. T. Northener[2].  (Doc. 1 at p. 2).  Billingsley seeks monetary damages in this cause of action from the defendants. (Doc. 1 at p. 4).  He sues Daniels in his individual capacity and Dr. Rahming in his official and individual capacities but does not state in which capacity Warden Billups is sued.  (Doc. 18 at p. 2).  The correctional defendants filed a special report (Doc. 22, Exs. 1-4) and the medical defendants filed a special report (Doc. 17, Ex. 1), to which they filed supplements (Doc. 25, Ex. 1), (Doc. 41, Ex. 1). These reports included relevant evidentiary materials in support of these reports, specifically affidavits, prison documents, and medical records, addressing the claims presented by Billingsley.   In these documents, the defendants deny they acted with deliberate indifference to Billingsley's medical needs and deny they used excessive force against him.

After reviewing the special reports and exhibits, the court issued an order on April 20, 2017, requiring Billingsley to file a response to the defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without**

---

[2]  Although T. Northener is named as a defendant and specific allegations are made against him in the complaint, he is not a party to this action.  Indeed, the copy of the complaint, which was mailed to T. Northerner, was returned as undeliverable to the court on March 17, 2017.   Thereafter, the court ordered that the plaintiff provide a correct address for T. Northener.  (Doc. 16).  The plaintiff has failed to provide the court with this address.  Thus, because T Northener was not properly served, he is not a defendant in this action.

**further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 24 at p. 2). Billingsley filed responses to this order. (Docs. 34, 35, 38 and 43). Pursuant to the directives of the order entered on April 20, 2017, the court now treats the defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed.R.Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial

---

[3]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24.  The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").  Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.  *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.

*Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted).  Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff

fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict

in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323–24.  A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.  *Id*.  To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Billingsley's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Billingsley has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  FACTS

Billingsley alleges that around 5:00 a.m. on August 6, 2016, Defendant Daniels refused his requests for a nurse's assistance to empty his drainage bags that were placed on his body following surgery. (Doc. 18 at p. 1). Specifically, Billingsley states that he was standing at the security gate and Defendant Daniels refused to let him out so that he could get a nurse's assistance. *Id.* In addition, he alleges that Defendant Daniels grabbed his wheelchair and "at an accellearated {sic} speed pushing the plaintiff away from the gate area causing the plaintiff to be thrown or ejected from the whellchair {sic} on to a steel locker box that tore open his healing wounds from the surgery." *Id.* He alleges that as a result of Defendant Daniels' actions that he "spent 3 weeks in a free world hospital." (Doc. 18 at p. 2). He further alleges that Dr. Rahming caused him additional injury because he "would not give his immediate approval to have the plaintiff taken back to Jackson Hospital." *Id.*

Defendant Daniels denies these allegations. (Doc. 22-1). Rather he states that, as he was pushing Billingsley's wheelchair back to his bed, Billingsley "jumped out of the chair, fell on the found, and started shaking like he was having a seizure." (Doc. 22-1 at p. 2). The incident report concludes that, after further investigation, "it was discovered that inmate Billingsley fell from his wheelchair on purpose." (Doc. 22-3). Additionally, Ebony McCord, a nurse with Corizon, testified by affidavit that on August 6, 2016, she heard Officer Daniels tell the plaintiff "to move away from the gate at least three (3) times." (Doc. 22-4 at p.1).

The plaintiff was seen by a nurse at 5:30 a.m. immediately following the incident on August 6. It was noted that he had a drain to the right abdomen and a healing surgery incision. An inmate body chart was performed. (Doc. 22-2). The report stated specifically that the plaintiff's "skin is warm, dry and intact. No redness, so swelling noted. Surgical drain to right abdomen remains patent and intact. No open areas observed from reported incident. No S/S of trauma noted." *Id.* Further Defendant Wilcotte Rahming, M.D. testified by affidavit as follows:

> When Mr. Billingsley was seen by the medical personnel at Kilby Correctional Facility subsequent to the incident that occurred on August 6, 2016, he did not suffer from any injuries or have any medical need to be sent immediately to Jackson Hospital in Montgomery, Alabama. . . . Mr. Billingsley did not suffer from any medical trauma, nor was he in need of emergency medical treatment subsequent to the incident on August 6, 2016. Mr. Billingsley was evaluated by the medical staff at the Kilby Correctional Facility and it was determined that there was not immediate need for Mr. Billingsley to be seen by an outside medical specialist. During this time, I was in contact with the surgeon who had previously performed surgery on Mr. Billingsley. Shortly after the incident on August 6, 2016, Mr. Billingsley was again sent out to Jackson Hospital to be seen by the outside specialist surgeon. The event that took place on August 6, 2016, had no negative effects on Mr. Billingsley's well being or his medical treatment.

(Doc. 25-1 at p. 3).

## IV.  DISCUSSION

### A.    ABSOLUTE IMMUNITY

To the extent Billingsley requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held:

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress'

> intent to abrogate the States' immunity from suit must be obvious from a clear
> legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and

citations omitted).  Thus, a state official may not be sued in his official capacity unless the state

has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v.*

*Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see*

*Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that
> "the State of Alabama shall never be made a defendant in any court of law or
> equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this
> prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is

prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment

immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753

(11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In

light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh

Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*,

619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding

that state officials sued in their official capacities are protected under the Eleventh Amendment

from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir.

1995) (holding that damages are unavailable from state official sued in his official capacity).

Thus, the Court will now address the plaintiff's claims brought against defendants in their

individual capacities.

**B.    RESPONDEAT SUPERIOR**

Billingsley does not allege that Warden Billups was personally involved in the August 6, 2016, incident or had any involvement with his medical treatment.  To the extent the plaintiff alleges that Warden Billups is liable to him in her supervisory position based on a theory of respondeat superior, those claims must fail.  Indeed, the law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability.  *See Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).  Accordingly, the Court concludes that the plaintiff's claims premised upon a theory of respondeat superior are due to be dismissed.

**C.    DELIBERATE INDIFFERENCE**

**1.    <u>Standard of Review.</u>**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions."  *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.  "Within [a prison's] volatile community, prison administrators are to take all

necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same).  "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence," and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837.  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation.  *Caldwell*, 748 F.3d at 1099.  With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  Thus, "[m]erely negligent failure to protect an

inmate from attack does not justify liability under section 1983." *Id.* Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge they consciously disregard the risk. *Farmer*, 511 U.S. at 837.

## 2.   **Failure to provide medical assistance by correctional defendant**.

Billingsley alleges that correctional officer Daniels acted with deliberate indifference toward him when he prevented him from getting medical assistance to empty his drainage bags on August 6, 2016. (Doc. 18 pp. 1-2). To survive the properly supported motion for summary judgment filed by the defendants, Billingsley must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 Fed. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Billingsley must then satisfy the subjective component. This requires Billingsley to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003)   (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could

be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 Fed. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Billingsley's allegation that correctional officer Daniels acted with deliberate indifference toward him by preventing him from getting medical assistance to empty his drainage bags on August 6, 2016, fails based on the undisputed medical evidence of record. Indeed, Dr. Rahming testified unequivocally by affidavit that the plaintiff "did not suffer from any medical trauma, nor was he in need of emergency medical treatment subsequent to the incident on August 6, 2016." (Doc. 25-1 at p. 3). Moreover, the inmate body chart taken immediately following the August 6, 2016, incident states that the plaintiff's "skin is warm, dry and intact. No redness, so swelling noted. Surgical drain to right abdomen remains patent and intact. No open areas observed from reported incident. No S/S of trauma noted." (Doc. 22-2). Thus, the undisputed medical evidence demonstrates that Billingsley's medical condition on August 6, 2016, presented no objective substantial risk of serious harm of which Defendant Daniels was aware. *Johnson,* 568 Fed. App'x at 721. Accordingly, the Court concludes that summary judgment is due to be granted in favor of correctional officer Daniels on the claim alleging he acted with deliberate indifference to Billingsley.

### 3.   Failure to provide medical treatment by medical defendant

Plaintiff alleges that Dr. Wilcotte Rahming was deliberately indifferent to his medical needs because following the August 6, 2016, incident, he failed to take him to the emergency room for medical treatment. (Doc 1 at p. 3).

That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful

15

acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical

malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things[:] awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe*, 888 F.2d 783, 787 (11th Cir. 1989)]. Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the

17

> level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292
> ("Medical malpractice does not become a constitutional violation merely because
> the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical
> malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871
> F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).
> Nor does a simple difference in medical opinion between the prison's medical staff
> and the inmate as to the latter's diagnosis or course of treatment support a claim of
> cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v.
> Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotation marks). To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (citation and internal quotation marks omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient); *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion

is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm."). Indeed, Dr. Rahming testified by affidavit that the plaintiff "did not suffer from any medical trauma, nor was he in need of emergency medical treatment subsequent to the incident on August 6, 2016." (Doc. 25-1 at p. 3). This diagnosis is confirmed by the inmate body chart performed by a nurse immediately following the August 6, 2016, incident that states the plaintiff's "skin is warm, dry and intact. No redness, so swelling noted. Surgical drain to right abdomen remains patent and intact. No open areas observed from reported incident. No S/S of trauma noted." (Doc. 22-2). Accordingly, the court concludes that the undisputed medical evidence of record fails to demonstrate that the plaintiff suffered from a serious medical need or that the defendants were deliberately indifferent to that need. *Mann,* 588 F.3d at 1306–07.

### 4.    **Excessive Force**

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

[u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in an a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4) 'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that, "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security."). In addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that there is no dispute the plaintiff refused to follow repeated orders from Daniels to

move away from the gate.  (Doc. 22-4).  The plaintiff does not dispute these facts.  Rather, he claims that Defendant Daniels grabbed his wheelchair and "at an accellearated {sic} speed pushing the plaintiff away from the gate area causing the plaintiff to be thrown or ejected from the whellchair {sic} on to a steel locker box that tore open his healing wounds from the surgery." (Doc. 18 at p. 1).  Although Defendant Daniels denies these allegations, (Doc. 22-1 at pp. 1-2), the court must accept the plaintiff's statement as evidence to be considered on a motion for summary judgment.  *See Sears v. Roberts,* 922 F. 3d 1199, 1206 (11th Cir. 2019).  Thus, assuming Defendant Daniels used force on the plaintiff as he claims, the court concludes that an inmate's failure to failure to follow orders from correctional officers justifies the use of some force.  Indeed, the Eleventh Circuit has affirmed the "need" for force where the plaintiff first failed to obey an order and then "evaded [the officer's] attempt to get him to comply".  *Miles,* 757 F. App'x at 830 citing *Bennett,* 898 F.2d at 1533 ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance.")

The question then becomes whether the need to ensure the plaintiff's compliance with the order justified the amount of force used.  *Miles, id.*  In this specific instance, the plaintiff alleges that Defendant Daniels grabbed his wheelchair and "at an accellearated {sic} speed pushing the plaintiff away from the gate area causing the plaintiff to be thrown or ejected from the whellchair {sic} on to a steel locker box that tore open his healing wounds from the surgery."  (Doc. 18 at p. 1).  In *Miles*, the Eleventh Circuit recognized that the "use of a takedown" which included the prisoner being tackled onto his bed and then onto the floor and being slammed against a wall was not excessive when the prisoner "failed to obey a jailer's orders."  757 F. App'x at 829-30. Furthermore, the court notes the plaintiff fails to present any evidence that the force used against him was malicious or sadistic.  Indeed, force is deemed legitimate in a custodial setting as long as

22

it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley,* 475 U.S. at 320-21.   Thus, the court concludes that the questions of the need for force and its proportionate use are answered in favor of the defendants.

The court also concludes that the third and fourth *Whitley* factors weigh against the plaintiff.   Although there is no evidence that the plaintiff reacted violently when dealing with Defendant Daniels, it is undisputed that the plaintiff received a disciplinary for his conduct on August 6, 2016.   (Doc. 22-3).   Thus, the court concludes that Defendant Daniels could have reasonably perceived the plaintiff presented some threat for creating a disturbance.   Finally, the court concludes that Defendant Daniel's use of force was tempered because he never touched the plaintiff.   Rather Billingsley alleges that he that Defendant Daniels grabbed his wheelchair and "at an accellearated {sic} speed pushing the plaintiff away from the gate area causing the plaintiff to be thrown or ejected from the whellchair {sic} on to a steel locker box that tore open his healing wounds from the surgery."  (Doc. 18 at p. 1).   Under the law of this circuit, these allegations fail to establish a claim for excessive force.

Finally, the court considers the extent of the injury suffered by the plaintiff.   He alleges that due to the contact with Defendant Daniels he was thrown from the wheel chair onto a steel box and his wounds from a prior surgery were torn open. *Id.*   However, the body chart taken on the plaintiff within thirty (30) minutes after the incident shows the "surgical drain to right abdomen patent and intact" and "[n]o open areas observed from reported incident.   No S/S of trauma noted." (Doc. 22-2).   Further, Dr. Rahming testified by affidavit that the plaintiff "did not suffer from any medical trauma, nor was he in need of emergency medical treatment subsequent to the incident on August 6, 2016."  (Doc. 25-1 at p. 3).   Accordingly, the court concludes that the medical evidence does not support the plaintiff's allegations of an extensive injury. *Miles,* 757 F. App'x at 830

23

(finding no "serious injury" where the only treatment was Tylenol).   Accordingly, the court concludes that summary judgment is due to be granted on the plaintiff's excessive force claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **August 16, 2019**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 2nd day of August, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE